USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIANMEI LIN,

                    Petitioner,

-against-

MICHAEL BORGEN, in His Official Capacity as USCIS Acting Field Office Director, et al.,

                    Respondents.

25-CV-05618 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

      Over two decades ago, Petitioner Jianmei Lin was ordered removed from the United States to the country of his birth, the People's Republic of China. In 2010, after being detained, Petitioner was released and issued an Order of Supervision ("OSUP") because the Chinese Consulate General in New York declined to issue travel documents necessary to effectuate his removal. On July 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner in order to effectuate his removal because ICE now believes it will be able to acquire the necessary travel documents. That same day, Petitioner brought this action and filed a Petition for a Writ of Habeas Corpus, under 28 U.S.C. § 2241, seeking, among other things, to stay the execution of his removal order and release him from ICE custody to await the adjudication of his pending application for a provisional unlawful presence waiver, also known as a Form I-601A. *See* Dkt. No. 1 (the "Petition" or "Pet."). For the reasons stated herein, the Court lacks jurisdiction to issue such relief, and therefore, must deny the Petition.

1

## FACTS & PROCEDURAL BACKGROUND[1]

Petitioner is a native and citizen of the People's Republic of China. Mascia Decl. ¶ 3. On or about August 24, 1992, a Border Patrol Officer encountered Petitioner near Cochise, Arizona, and determined that Petitioner had entered the United States at or near Douglas, Arizona, without inspection by an Immigration Officer. *Id.* ¶ 4. On August 28, 1992, Petitioner was placed into deportation proceedings. *Id.* ¶ 5. On October 6, 1994, after conducting a deportation hearing, an Immigration Judge issued a decision and order granting Petitioner voluntary departure in lieu of deportation and denying all other forms of relief. *Id.* ¶ 6. In that order, Petitioner was advised that if he failed to voluntarily depart from the United States by November 6, 1994, then he would be subject to deportation. *Id.* ¶ 6.

On October 17, 1994, Petitioner timely appealed the Deportation order to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on April 1, 1996. *Id.* ¶¶ 7–8. In its decision and order, the BIA permitted Petitioner to voluntarily depart from the United States within 30 days of the BIA's decision and advised Petitioner that he would be deported if he failed to timely depart. *Id.* ¶ 8.

Petitioner did not voluntarily depart from the United States. *Id.* ¶ 9. On April 17, 1997, Immigration and Naturalization Service ("INS")[2] issued a letter to Petitioner, directing that he

---

[1] The Court's recitation of facts is primarily drawn from the Declaration of Jason Mascia, a Deportation Officer at ICE assigned to manage Petitioner's removal. *See* Dkt. No. 10 (the "Mascia Declaration" or "Mascia Decl."). Citations to the Mascia Declaration incorporate by reference the exhibits cited therein.

In his reply in further support of the Petition, Petitioner does not contest or dispute the facts represented by Officer Mascia or reflected in the materials appended to the Mascia Declaration. In addition, at oral argument, Petitioner was given an opportunity to identify factual errors and did not cite any, other than a difference of views as to the likelihood of obtaining travel documents from the People's Republic of China. *See* Tr. 29–30.

[2] INS was the predecessor agency to United States Citizenship and Immigration Services ("USCIS") and ICE, prior to the creation of the Department of Homeland Security.

surrender to INS on May 29, 1997. *Id.* ¶ 10. Again, Petitioner failed to voluntarily comply with the directives of immigration authorities. *Id.* On May 27, 2001, Petitioner was arrested in Akron, Ohio and charged with one count of theft under Ohio state law. *Id.* ¶ 11.

On May 6, 2010, ICE New York City Fugitive Operations Team arrested Petitioner outside of his residence, pursuant to a Warrant of Removal/Deportation, also known as a Form I-205, and transported him to the New York Field Office located at Varick Street in Manhattan for processing. *Id.* ¶ 12. Petitioner was then detained at Hudson County Correction Facility in Kearny, New Jersey, pending removal. *Id.* On August 4, 2010, ICE released Petitioner on an OSUP after the Chinese Consulate General in New York declined to issue travel documents. *Id.* ¶ 13. The OSUP permitted Petitioner to remain at liberty, contingent upon his compliance with certain conditions, including reporting as directed to ICE and assisting ICE with obtaining necessary travel documents for his removal. *Id.* ¶ 13.

Following his August 2010 release, Petitioner began taking steps to attain lawful permanent resident status in the United States, based on his marriage to his wife, a legal permanent resident. *See* Tr. 10–11[3]; Mascia Decl. ¶¶ 15, 20. On May 14, 2018, Petitioner submitted an Application for Permission to Reapply for Admission into the United States After Deportation or Removal, also known as a Form I-212, which was approved by USCIS on March 5, 2025. *See* Mascia Decl. ¶¶ 14, 19. On September 9, 2019, on behalf of Petitioner, Petitioner's wife submitted a Petition for Alien Relative, also known as a Form I-130, which was ultimately approved by USCIS on June 27, 2023. *See id.* ¶¶ 15–18. On April 18, 2025, Petitioner submitted an Application for Provisional Unlawful Presence Waiver, also known as Form I-

---

[3] Citations to "Tr." refer to the transcript of the July 21, 2025 show cause hearing and oral argument on the Petition as described infra.

601A, which is still pending.  *Id.* ¶ 20.  In brief, the I-601A, if approved, would allow Petitioner to bypass the 10-year waiting period to apply for re-admission that would otherwise be applicable, and instead travel to China with the approved I-601A, immediately apply at a U.S. Consulate in China for a visa to lawfully enter the United States, and wait in China only for whatever time was necessary to receive visa approval to re-enter.  *See* Tr. 13–15.

On July 8, 2025, ICE arrested Petitioner at 26 Federal Plaza in Manhattan, following a scheduled check-in under his OSUP.  Mascia Decl. ¶ 21; Tr. 28:17–18.  ICE served Petitioner with a Notice of Revocation of Release, informing him that he would be detained pending his imminent removal and outlining the reasons for the revocation of his OSUP.  Mascia Decl. ¶ 21.  Petitioner was also provided an informal interview as an opportunity to respond to ICE's revocation of his OSUP.[4]  *Id.*  On July 10, 2025, ICE reissued and served Petitioner with a revised Notice of Revocation of Release to correct a scrivener's error with respect to the country of removal, and Petitioner was again provided an informal interview.  *Id.* ¶ 22.  On July 11, 2025, Petitioner was transferred to Orange County Correctional Facility in Goshen, New York, where he remains detained while awaiting removal.  *Id.* ¶ 23.  On July 14, 2025, ICE interviewed Petitioner in order to complete a new application to obtain a travel document for repatriation to the People's Republic of China, and submitted the completed application that same day to the Chinese Embassy in Washington D.C.  *Id.* ¶¶ 24–25.  If and when the Embassy provides the requested travel document, Petitioner's removal can be effectuated.[5]  *Id.* ¶ 26.

---

[4] The documentation of the informal interview, Mascia Decl. Ex. E, contains several blank entries.  At oral argument, the Government was unable to explain these blank entries but represented that the required informal interview had occurred.  *See* Tr. 32–33.  Petitioner did not contest that assertion.

[5] The Government represented that Petitioner's provision of his birth certificate represents a material change in the likelihood that travel documents can be obtained from the People's Republic of China, in contrast to prior efforts when Petitioner either did not have or did not provide that document.  *See* Tr. 26–28.

On July 8, 2025, the same day he was detained, Petitioner filed the instant habeas action. *See* Dkt. No. 1.  The next day, on July 9, 2025, the Court issued an Order to Show Cause, setting an expedited briefing schedule and hearing on the Petition, as well as restraining Respondents from removing Petitioner from this District.  Dkt. No. 3.  On July 15, 2025, the Government filed its opposition.  *See* Dkt. Nos. 10–12.  On July 18, 2025, Petitioner filed his reply, which was later amended on July 20, 2025.  *See* Dkt. Nos. 13 & 16.  On July 20, 2025, the Government filed a letter sur-reply.  Dkt. No. 15.  On July 21, 2025, the Court held a show cause hearing and oral argument on the Petition.

## DISCUSSION

At the outset, during the July 21 hearing, Petitioner re-affirmed that the relief he seeks is to restrain the Government from effectuating the existing, valid removal order against him, in hopes that he will receive a favorable adjudication of his pending Form I-601A, which would effectively obviate his removal order because Petitioner could stay in the United States with his wife and children until the Form I-601A was adjudicated and, if it were granted, then voluntarily depart the United States to begin the process of seeking lawful re-entry as described above.  *See* Tr. 8–14.  The Court must deny the Petition because the Court lacks jurisdiction to grant the requested relief.

Under 8 U.S.C. § 1252, which governs and constrains judicial review of a final order of removal, federal district courts retain very limited subject-matter jurisdiction to review challenges to orders of removals.  First, 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued."  8 U.S.C. § 1252(a)(5).  Second, 8 U.S.C. § 1252(b)(9) further provides that "[j]udicial review of all questions of law and fact,

including interpretation and application of constitutional and statutory provisions, arising from <u>any action taken</u> or proceeding brought to remove a[] [noncitizen] from the United States . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9) (emphasis added). "Sections 1252(a)(5) and 1252(b)(9) channel all challenges to removal orders and removal proceedings to the courts of appeals." *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019). And finally, 8 U.S.C. § 1252(g) further provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g).

 In *Delgado v. Quarantillo*, the Second Circuit held that the district court did not have jurisdiction over a mandamus action to compel USCIS to make a determination on the petitioner's Form I-212, and expressly held that § 1252(a)(5) precludes not only "direct" challenges to removal orders, but also "indirect" challenges. 643 F.3d 52, 55 (2d Cir. 2011). Following *Delgado*, many district courts in this Circuit have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction. *Asylum Seeker Advoc. Project*, 409 F. Supp. 3d at 225 (collecting cases); *see, e.g.*, *Achbani v. Homan*, No. 17-CV-01512 (JBA), 2017 WL 4227649 (D. Conn. 2017) (holding the court lacked subject-matter jurisdiction over the plaintiff's request to be released from detention and to be allowed to remain in the United States to apply for and have adjudicated a Form I-601A); *Leybinsky v. USCIS*, No. 19-CV-06154 (RPK) (LB), 2021 WL 4407829 (E.D.N.Y. Sept. 26, 2021) (holding the court lacked subject-matter jurisdiction over the plaintiff's request to vacate his order of removal, adjust his immigration status, and vacate his OSUP); *Ceesay v. Bondi*, No. 25-CV-03716 (JSR), 2025 WL

1435615 (S.D.N.Y. May 16, 2025) (denying a motion for a temporary restraining order to enjoin the Government from detaining the plaintiff for the purposes of removing him from the United States). "[W]hether [a] district court has jurisdiction will turn on the substance of the relief that the plaintiff is seeking." *Delgado*, 643 F.3d at 55.

Petitioner readily concedes that the order of removal entered against him is valid and has been valid for nearly two decades. *See* Tr. at 15:12–15. Petitioner was placed in removal proceedings in 1992, the Immigration Judge directed Petitioner to voluntarily depart, which he did not, and then, after the BIA ultimately denied Petitioner's appeal of the Immigration Judge's order, Petitioner did not seek any further review and continued to remain in the United States. *See* Mascia Decl. ¶¶ 5–9. Moreover, the issuance of the OSUP was a wholly discretionary act by ICE, which did not supersede or otherwise undermine the validity of the removal order, and the terms of the OSUP expressly conditioned Petitioner's release upon his compliance with certain conditions, including assisting ICE in obtaining necessary travel documents for his removal. *Id.* ¶ 13; 8 C.F.R. § 241.4.

Petitioner's request to release him from his current detention and stay his removal is, in sum and substance, a challenge to his final order of removal or, at a minimum, a request for an order that ICE refrain from executing that final order, in hopes that USCIS will grant his pending Form I-601A, which would allow him to apply to adjust his immigration status on a shorter timeframe and, if he was successful, obviate the removal order down the road. This Court cannot entertain the Petition under the plain language of § 1252.

First, to the extent that the Petition "arises from [a] decision or action . . . to . . . execute [the] removal order[] against [Petitioner]," no court has jurisdiction to hear the Petition. *See* 8 U.S.C. § 1252(g). Indeed, ICE's discretionary decision to revoke the OSUP and detain

7

Petitioner in order to effectuate his removal is premised on a change in the circumstances previously inhibiting Petitioner's removal—namely, the Petitioner's provision of his birth certificate, which altered the Government's potential ability to obtain travel documents for Petitioner.  *See* 8 C.F.R. §§ 241.13(g)(1), (i)(2) (providing ICE may revoke a noncitizen's release and detain the noncitizen if "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future"); Tr. 26–28; *see also Golding v. DHS/ICE*, No. 20-CV-08679 (VSB), 2024 WL 3012620, at *4 n.7 (S.D.N.Y. June 13, 2024) (collecting cases reflecting that courts in this district have interpreted § 1252(g) to apply to discretionary acts by the Attorney General or ICE).  ICE served Petitioner with a Notice of Revocation of Release, informing him that he was being detained because his removal was imminent.  *See* Mascia Decl. ¶¶ 21–22.  Upon acquiring Petitioner's birth certificate, ICE completed and submitted a new application to obtain a travel document, which is currently pending with the Chinese Embassy in Washington D.C.  *See id.* ¶¶ 24–26.  Accordingly, all that remains is for the Embassy to issue a travel document for Petitioner.  The relief requested by Petitioner from this Court would bar ICE from effectuating his removal, and "'the Government would be without a mechanism to enforce the removal order,'" and therefore this Court's jurisdiction is similarly barred by § 1252(g).  *See Ceesay*, 2025 WL 1435615, at *2 (quoting *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 350 (S.D.N.Y. 2019)).

In his amended reply, Petitioner argues that he is not challenging ICE's discretion, but rather "ICE's legal authority to exercise such discretion where the subject of a removal order also has a right to seek relief made available by the DHS regulations."  Dkt. No. 16 at 3.  This argument sounds as a request for judicial review of a question of law with respect to ICE's removal authority.  Accordingly, and alternatively, to the extent the Petition seeks judicial review

8

of the order of removal or judicial review of a question of law or fact arising from actions undertaken by ICE to remove him from the United States, the Second Circuit is the sole and exclusive forum for the Petition.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).

Notwithstanding the plain language of § 1252 and the weight of precedent in this Circuit, Petitioner also relies heavily on *Calderon v. Sessions*, in which the court granted a habeas petition allowing for the petitioner's release from detention and staying removal until the petitioner exhausted the process of seeking a provisional unlawful presence waiver.  330 F. Supp. 3d 944, 960 (S.D.N.Y. 2018).  The Court finds *Calderon* has little to no persuasive authority, especially in light of the fact that other courts within this Circuit have either substantially rejected its reasoning or declined to extend its application.  *See, e.g.*, *Asylum Seeker Advoc.*, 409 F. Supp. 3d at 227; *Jiang v. Bondi*, No. 24-CV-03138 (HG), 2025 WL 1503986, at *3 (E.D.N.Y. May 27, 2025); *Khalil v. Joyce*, 771 F. Supp. 3d 268, 281 (S.D.N.Y. 2025) (referring to *Calderon* as "an outlier").

Even if the Petition fell within this Court's jurisdiction—which the Court finds it does not—whatever the merits of *Calderon*, there, the court was primarily concerned with the petitioner's asserted <u>right</u> to seek a provision waiver, of which Petitioner has already availed himself.  *See Calderon*, 330 F. Supp. at 985 (holding the petitioner "has a right to apply for a provisional unlawful presence waiver").  Petitioner has completed all three steps in order to obtain a provisional waiver—(1) USCIS has approved the Form I-130, filed by Petitioner's wife on his behalf; (2) USCIS has approved the Form I-212; and (3) Petitioner has filed the Form I-601A and completed his necessary biometrics examination.  Mascia Decl. ¶¶ 14–20; Tr. 16.  Under the relevant regulations, USCIS may request additional evidence from or an interview with Petitioner, but USCIS may also, at this stage, decide to approve or deny the Form I-601A

9

without any additional information, and USCIS is able to render a final determination on the Form I-601A whether Petitioner remains in the United States or not.[6]  *See* Tr. 16–17.  Petitioner has no apparent cognizable interest under either the U.S. Constitution or the Administrative Procedure Act in an entirely discretionary decision by USCIS as to the final disposition of his Form I-601A.  *See, e.g.*, *Agyapomaa v. Mayorkas*, 680 F. Supp. 3d 141, 156–58 (D. Conn. 2023).

At bottom, Petitioner argues that it makes no sense for DHS to make an avenue for relief available to persons like Petitioner, and then remove them from the United States while they are in the middle of pursuing DHS' own alternative process.  But that is primarily a policy argument and, for the reasons discussed above, passing on the wisdom of ICE's policy judgments is outside of this Court's purview.

## CONCLUSION

For the foregoing reasons, the Petition is DENIED.  It is further ORDERED that the Order to Show Cause (Dkt. No. 3) restraining Respondents from transferring Petitioner outside of the Southern District of New York shall be in effect through **11:59 p.m. EDT on Friday, August 1, 2025**, in order to enable Petitioner to seek relief from the Court of Appeals for the Second Circuit if he chooses.  *See* 28 U.S.C. § 1651.  Nothing in this Order shall be construed to preclude Petitioner from applying for relief in any other forum, or later applying for relief from his continued detention should that detention continue past the point of reasonableness, *see Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001), or be otherwise unlawful at some future date.

---

[6] At oral argument, Petitioner conceded that there is also an alternative process, a Form I-601, by which he can obtain a provisional unlawful presence waiver once he is outside the United States, even if his Form I-601A is deemed abandoned upon his removal.  *See* Tr. 23.

10

The Clerk of Court is respectfully directed to CLOSE this case.

Dated: July 30, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge
